■ J.A., Respondent, v S.A., Appellant. [773 NYS2d 14]—

Order, Supreme Court, New York County (Joan Lobis, J.), entered June 4, 2003, which denied defendant's motion to direct plaintiff to transfer to him the ownership of a variable whole life policy pursuant to the parties' October 15, 2002 stipulation of settlement, incorporated but not merged into the judgment of divorce, and denied defendant's request for attorneys' fees, unanimously reversed, on the law and the facts, without costs

or disbursements, the motion granted and plaintiff directed to execute and deliver to defendant a form of transfer of ownership of the whole life policy pursuant to the said stipulation on condition that defendant return to plaintiff the sum of $165,608.57 within 20 days of service of a copy of this order, with notice of entry, and a hearing directed to determine the reasonableness of defendant's attorneys' fees incurred in the enforcement of the transfer of ownership of the aforesaid policy.

On October 15, 2002, after the breakup of a 20-year marriage, plaintiff wife and defendant husband, in settlement of the wife's divorce action, entered into a written stipulation of settlement, incorporated but not merged into the judgment of divorce, pursuant to which the wife received, inter alia, the parties' marital residence, personal property, $550,000 from their securities account and several million dollars in equitable distribution. The stipulation also provided for the payment of spousal support to the wife in the sum of $45,000 per month through July 31, 2007, and thereafter gradually scaled downwards to $10,000 per month beginning August 1, 2009, and child support for the parties' two children as well as 100% of all medical, private school and college expenses. At the time of the settlement, two policies insuring the husband's life, each with a death benefit of $1,000,000, were in existence: one a term life policy with an annual premium of approximately $5,600, the other a variable whole life policy with an annual premium in excess of $19,000. Apparently, taken together, these policies did not provide enough insurance to secure the husband's support obligations should he predecease the wife. There is, however, separate life insurance to secure the husband's child support obligations until the children are emancipated. Article IX of the agreement, in relevant part, provided that the wife might, at her option and at her expense, assume the existing term life insurance policy if she elected to do so by February 1, 2003. Article IX also provided that the wife, the owner of the variable ordinary life policy with an alleged cash surrender value of approximately $229,670.07, was to transfer the ownership of that policy to the husband unless, by February 1, 2003, she notified him that she elects to retain ownership. If she did so elect, the wife was to see that the husband received the policy's cash surrender value. Upon the wife's request, the husband was to submit to a physical examination to assist the wife in obtaining additional insurance on his life. Article XV required the wife to give notice to the husband of her election, if any, in writing. The stipulation prohibited oral modification of its terms and required all amendments to be duly subscribed and acknowledged. Article XVII, paragraph 6, provided that neither party had made any

representations or warranties except as expressly set forth in the stipulation. Article XIII provided that a defaulting party was liable for the expenses, costs and attorneys' fees due to his or her failure to cure an event of default within 20 days after the sending of written notice.

The wife failed to exercise her right of election to receive or retain either policy within the allotted time and the husband's attorney notified the wife's attorney that the term life policy would remain with the husband and that the wife was required to transfer to the husband the whole life policy. Eventually, the husband, through counsel, sent the wife's counsel a notice declaring the wife in default for failure to execute and deliver a transfer of ownership form for the whole life policy. The husband thereafter moved for an order directing the wife to execute and deliver to him a form of transfer of ownership of the whole life policy in accordance with the parties' stipulation and awarding him the costs and expenses of enforcing the stipulation. The husband claimed legal fees in the sum of $3,500. In opposition, the wife alleged that for several months she attempted, in good faith, "to work out an arrangement that benefits both parties in that [she] obtains life insurance and [the husband] could have some life insurance." She claimed that the husband refused to disclose his true health status, leaving her no choice but to keep both policies. The wife advised that she would immediately transfer the cash surrender value of the variable life policy to the husband. The husband, in reply, denied that he ever made any misrepresentations about his health or insurability prior to the execution of the stipulation.

Finding that the wife desired to obtain new, less expensive life insurance but was impeded in her efforts by the state of the husband's health, Supreme Court denied the husband's motion and instead afforded the wife an additional 30 days from the date of its decision to make her election under article IX of the stipulation. The court further found, citing Domestic Relations Law § 236 (B) (8) (a), which authorizes the court to order a spouse to maintain life insurance to secure payment of his/her maintenance and child support obligations or equitable distribution award, that it is an abuse of discretion to fail to order a spouse to do so, and that it would offend public policy to hold the wife in default under the stipulation. We reverse.

Domestic Relations Law § 236 (B) (8) (a) merely authorizes a court to direct the maintenance of a policy of life or accident insurance to secure payment of a maintenance, support or distributive award; it does not mandate a court to do so. In that connection, the statute's operative words are, "[m]ay also order a

party to purchase." Unlike the cases relied upon by Supreme Court (*see Recuppio v Recuppio*, 246 AD2d 342, 344 [1998]; *see also Gold v Gold*, 276 AD2d 587, 590 [2000]), where it was held to be error to fail to direct the maintenance of insurance to secure such an award, what is involved here is a court-ordered stipulation of settlement of their differences fashioned by the parties themselves, not any court-ordered awards. Thus, the court was bound by the "policy of upholding settled domestic relations that underlies the doctrine of equitable estoppel in divorce cases" (*see Rainbow v Swisher*, 72 NY2d 106, 111 [1988]).

Here, the stipulation is clear and unambiguous in affording the wife until February 1, 2003 to exercise her life insurance options. Clearly, she failed to act within the deadline and thus waived her right of election. Supreme Court's extension of the deadline modified the "specific and clear" terms of the stipulation (*Matter of Levinson v Levinson*, 298 AD2d 673, 675 [2002]) in violation of basic contract principles (*see e.g. Cohen-Davidson v Davidson*, 291 AD2d 474 [2002]). Since, as noted, Domestic Relations Law § 236 (B) (8) (a) does not require a court to ensure that maintenance, support and distributive awards are secured by life insurance, the wife is bound by the terms of the stipulation into which she, represented by counsel, voluntarily entered.

Inasmuch as the wife, following Supreme Court's order, elected to retain both policies and paid the husband $165,608.57, the cash surrender value of the whole life policy, as calculated by the insurer, plus interest, receipt of which the husband, although disputing the amount owed under the stipulation, acknowledges and which he has offered to refund if he prevails on appeal, we direct such refund and remand for a hearing to determine the reasonableness of the attorneys' fees and expenses claimed (*see e.g. Kalman v Kalman*, 300 AD2d 487 [2002]). Concur—Nardelli, J.P., Sullivan, Rosenberger, Lerner and Gonzalez, JJ.